Now each side has 15 minutes and so that means for the appellant that's 15 minutes total. Now my understanding is that Fair Housing and Maitland are going to share time but I understand there's been a change and that Fair Housing will take 11 minutes and Maitland will take 4 minutes. Is that correct? Alright I see parties nodded and so I just want to I want to give you a little bit of if you can still stay there where you are and Miss Ling my understanding is you're gonna argue from council table correct? Okay thank you. Alright now when you have time basically you have 15 minutes total and I'm gonna expect you to stay to your time and I'm gonna call Fair Housing first and then I'm gonna call you Miss Ling last and but one thing that I want to tell you is they have 11 minutes and if we're still asking questions and we take Fair Housing over the 11 minutes like you both of you have seen in other cases I won't let that cut into your time you will have your four minutes no matter what okay so you don't need to worry because I see people at council table but I mean they get nervous and then they think oh they're using up all my time what do I do you will have your four minutes but if we have additional questions of Fair Housing that's on our time and we don't count that against you. That being said if we don't have additional questions when it when the clock hits 11 minutes and I'll ask it then I'm gonna ask you to sit down and we'll go over to Miss Ling and since you are both on the same side and you've decided to split your time Miss Ling when your time comes up if there are things that you agree about that they've said you can tell me that and you don't need to repeat them because you're only going to have four minutes so you don't want to re-argue things that the time's already been taken all right so we're going to go back to the appellant you have 15 minutes total so if you can state your appearance and tell me aspirationally how much time you would like to save for rebuttal. Thank you Your Honor, good morning and may it please the court. David Dience on behalf of Realm and Colfax PLLC. Aspirationally I would like to Your Honor, this appeal concerns two sets of issues a matter of contract interpretation that applies to all parties and additional questions specific to Miss Ling. I hope to address both sets of issues but would like to begin with the contract question that applies to all parties. The district court held that the agreement was unambiguous that the only reasonable interpretation is that paragraph C of the fee provision establishes a default rule under which the relevant firm is not entitled to a one-third contingency fee. If that interpretation is not unambiguously correct the decision needs to be reversed. Let me jump in on that just I think as we understand that part of the law so you're here to convince us that it's ambiguous and it needs to go back and take extrinsic evidence correct? Correct Your Honor. So the type of work that you do you had this contract with both of the parties correct and it's basically the same language. So we're not in and they fire you before the government comes in. You're six years in and then the government settles it three years later. Certainly there's proximal it's proximate it's proximate your firing is proximate because the government comes in the next day and I know that you do contingency work of course you want to get paid and when you do this type of work of course the government does sometimes come in and you anticipate that. So I would agree with you in the sense it could have been more clear but you drafted it to say if we are terminated this is how you determine our that's I guess it's because obviously you have to be when you take contingency seat contingency fee cases you have to be concerned about people firing you or the government coming in those are real possibilities and you're putting on all this money and you want to get paid if someone else comes in and takes over you want to be paid for what you've done moving the ball forward. Sure sure Your Honor no I think there's you know there's a reason why this was drafted the way it was but I think there's also a more fundamental point that I think was you know was throughout the district court's opinion this idea that a law firm drafted this and we really ought to hold it against them. Under DC law that's not actually how it's supposed to work. The first question is you look at the whether there's an ambiguity you don't take into consideration who drafted it even at the next step what the DC Court of Appeals says construction against the drafter at the last resort you don't get to that until you've considered all of the extrinsic evidence which the district court did not do did not send to a jury so it's really that you know I think this is a good question but it comes at the end and not the beginning of the analysis as the district court. You run a business you have to worry about getting paid and getting fired or the government coming in are two real things when you do these type of cases. Sure Your Honor and I don't think there's a dispute between the depriving the Relman firm of its fee or of government intervention. I think there was agreement there was some initial dispute but ultimately I believe the parties agreed in the district court that the Relman firm substantially performed and it's entitled to its fees under the agreement. Your Honor you asked you know what else could paragraph C of this of this contract could be doing. I think when you look at paragraph A of the agreement it's actually quite clear what paragraph C is doing why it is in the contract. So you know paragraph A the reason you have this provision that is very specific to a question of a settlement with a waiver there you do have a worry where if you don't have something that specifically addresses the waiver scenario your defendant could say okay I will settle with your client but you have to take this to your client I want to cut you out with fees and then you're ethically you have to take that to your client so the idea of paragraph A is to make sure that in the waiver scenario the firm is protected exactly as you suggested. Paragraph C comes in in order to make that work so we have... So why is paragraph C a standalone separate paragraph following B that doesn't have anything to do with A and if your isn't it there? Well Your Honor we have at the very end of A this is at page 115 of the excerpts of record it describes actual fees calculated in the manner described below. And below does not have one-third contingency. Well Your Honor that the comparison is one-third versus actual fees whichever is greater so what A is telling you to do is calculate one-third, calculate actual fees in the manner described below and then the Relman firm gets whichever is greater so that's why the scenario would be that there's the firm put in $250,000 of work and there's a $500,000 reward in that case one-third would actually undercompensate the firm and so this comparison lets you say in that case you get the actual fees. So counsel I think I probably agree with you that in A when it says actual fees C is how you would figure out that actual fees the problem is isn't it kind of a fallacy to say that just because that's true that this is not also the way to figure out actual fees in the circumstances where the C is how you figure out actual fees if A and B don't cover it. You know I'm saying in other words you can be right and I think maybe you are right but that's how you would figure out C is how you figure out actual actual fees for A but that doesn't mean the problem you have is that A doesn't cover your situation there was no waiver here right and B hasn't covered it. A and B clearly don't cover your situation so C is left and C covers so I don't in other words it doesn't matter to me whether or not C is how you do A it could that could be true and you could it could also be what covers your situation because A and B aren't implicated in your circumstances. I have a couple responses to that your honor. One is that you know when we read legal texts we say you don't expect to find an elephant hiding in a mouse hole. This is you know I agree with the premise of your question you know if you look at A, if A says go look at C to figure out how to do that calculation that has a very narrow role and then you know to read into into paragraph C then I think we agree performs that you know narrow narrow technical role you know also it dramatically changes the nature and it's like something that tells it makes sense to me that you have a figure out our actual fees right you know but you're saying is that that would all you know that we should somehow read that as only having a very narrow role you know if you didn't have if you didn't have A or B let's say if A or B were just missing here then you would just get your fees and we would look at C and you would get your fees right and A or B are missing here because when you read them they I don't think you disagree you disagree you agree that A and B don't cover your circumstance. Your honor we have we have I think there's a few ways of interpreting this contract which is kind of near the premise of the argument that there was an ambiguity one is that you can you can look at the last sentence of paragraph B and interpret that as applicable in our scenario of a settlement with no waiver you that you know I think there's the response to that has been well that requires it taking a more kind of isolated look at that lesson that lesson doesn't say anything about summary judgment doesn't say anything about trial the response we've heard is as well you got to read it in context with with what comes before that's really our point about about C as well I think another sort of separate point about why this paragraph C reading that the district court adopted doesn't work you know the contract is quite clear throughout I guess you're not do you concede you're not a B or B your honor we think there is a reading of the contract that we are within the last paragraph of B even though there's no summary judgment and there's no trial one of the interpretations that we've put forward is that the first two sentences are saying you know if there is summary judgment but there's there's a requirement to on the firm to seek fees the last sentence I think can be read I'm not saying that it has to be read it can be read you know in a in an isolated way similar to how FHC reads paragraph C you know putting that aside I think if we're not there we're in a gap so I think that we would say is if he doesn't cover it and he doesn't cover it so just a lot better if that last sentence of view is like its own was its own I mean you know there's you're asking us to read the last sentence of baby as if it's its own paragraph but it's not and C is its own pair is its own paragraph your honor I think there's a lot of different ways to write a contract so I'm not I'm not you're that point and I think all we're really asking is I'm not asking you your honor today to adopt this reading I think that this is something that ought to go to a jury that's a look at the extrinsic evidence but when you look at a paragraph see I think it is important that it serves a different role so it would be a little surprising to me if it does this really narrow thing but also this really big thing too I know since your time is limited I think we have your argument in mind I would like let's just say hypothetically and it is it's hypothetical we haven't conferenced on the case so I don't know what my colleagues think or I haven't expressed of you so let's say hypothetically we agree with you that it's ambiguous how does that affect what we would be because she has a default against her and that contain and that default is the same interpretation of the contract that you're fighting here right so what do we have to vacate that not because the normal regions you would vacate a default but because it has a faulty legal conclusion in it or what's showing what has to be done on the other part of it you said you wanted to cover that before so I think regardless of the interpretation whether you agree with me that it's ambiguous or not and send it back I think there's a problem with the judgment estimate is laying the district court entered a default judgment but entered it you know within our view the wrong interpretation said the district court said I'm legally powerless to grant grant you the relief that you seek as a result of the default so certainly if in the reason of that was because the agreement was an ambiguous and it meant what we're talking about today so certainly if you disagree with that you vacated the judgment has to be vacated as well so doesn't it all revolve around what we think if we think the contract is ambiguous or unambiguous because it would seem to me if we agree with is a judge Gutierrez I think if we agree with judge Gutierrez that it was unambiguous then we don't really have to set aside the default well we would have to set it aside well if we agree that it's unambiguous then it's correctly included in the people but if we say it's ambiguous like you want us to then we would have to set it aside your honor in our view in both situations you'd have to set it aside because because there's a there's a different problem with the judgment estimate laying under rule 37 the district court have authority to that was a punishment in a deterrent for for discovery of use not because of the merit so you know what we explain in our brief is that the district court erroneously you know made a legal decision that it could not award us the relief that we saw already entered summary judgment and entered that order so that's not those merits were already established why is it that you are that engine in declining to award both attorneys fees which would be substantial and a one-third of Miss Ling's heart of the settlement why are you saying that that reached the merits when the merits were already determined your honor it's sort of it happened as a matter of fortuity because these two parties were part of the same case that the district court happened to reach the summary judgment issue first and then the default judgment issue if it had been reversed that the district court could have looked at this said there was a complete and willful discovery violation here the warrants default judgment and yeah you get you get the remedy that you wanted so we're making a very limited point here which was the district court made a legal ruling it was bound not to enter the relief that we requested because because the court had already disagreed about the merits the point of rule 37 sanctions it says you a different rule 37 sanction is you to bar a party from making a claim or an offense you it disables the party from from making a point about the merits making claims on the merits so in our view it's just a legal error to say that the district court's views of the merits of the case you know affected its authority to enter the scope of the default judgments and I can ask a real quick question what is the difference between what you'll get if you were to get a third versus your fees I think you said they get seven hundred and seventy five thousand which I can figure out what a third of that is but what would your fees be right now so there's two parties to the underlying false claims that case the CRA yeah but the 504 is not is not part of is not part of this and part of you know what we'd be talking about here you know there's the CRA but then there's separately the city of Los Angeles that hasn't been resolved yet which is why we don't know we don't know what the number is we know how there could be a bigger difference there's there's bigger there's bigger stuff coming down the road and we have the email that's in the record of the this is the Michelle white email that says well if Roman gets a third and this was like that I think whatever happens in this walk okay well I see I've gone into my questions I'll give you two minutes for rebuttal all right thank you all right we'll hear from their housing and we'll put 11 minutes on the clock thank you I'd like to talk about why it's not ambiguous and why C is a standalone paragraph and not a sub sub paragraph to 1a and it's not a footnote to 1a why it stands on its own in all other cases at the beginning of C that would be better wouldn't it that would that makes it less ambiguous to me I don't think it makes it less ambiguous at all the paragraph stands on its own it is what's left in the contract if a and B were not even in the contract they've gone away because they don't apply then you read directly from the opening paragraph shall be calculated as follows read the piece shall be calculated as follows and then you get to see real shall be calculated using the load start method it just it's right there it flows in fact that C is the standalone fee arrangement in the Roman firms civil rights cases they wrote a treatise about this they tell other lawyers to use that as a standalone fee in their civil rights cases and the opponents for the Roman firm admitted that this contract was drafted from that template the civil rights template if you look at the very first page of the fee agreement it talks about seeking injunctive relief there's no injunctive relief in the false claims act case this came from their civil rights template just stuff if I understand this if the underlying case settles is it correct that Roman would have no say in whether you agree to a settlement that provides for fees or not or whether you waive your rights to seek court awarded awarded fees or not that's correct so if you assume the underlying case settles for a large monetary amount as a poet has somewhat indicated as a possibility as a practical matter why would Roman agree to a provision that might yield two radically different fee awards under these circumstances depending on what fee related terms you agree to I can't speak to their mindset all I can say is this is drafted from their civil rights fee agreement template and they used it where the C language is always the contingency fee that the Roman firm agrees to accept in civil rights cases because it is as we all know civil rights cases have a statutory fee provision just like the false claim like that's a statutory fee provision that's their bread and butter the seeking of these however the fees can be waived only by the plaintiff as opposed to 504 where that's not as an established right I believe that's not correct your honor both in the fight in in the civil rights cases which would be the 504 case and in false claims act cases the the fee the right to apply for fees belongs to the client not to the a settlement agreement that includes a waiver and that settlement agreement has been accepted by the plaintiff client that is in order to induce that settlement because it means that the defendant won't be paying out yet another sum of money is that right that situation can occur we've seen that a situation occur in our practice we've been this for 30 years we've seen that happen once or twice where the almost a bankrupt defendants that I think I'm pleading the empty pockets defense I can't but so Roman is kind of got this binary situation waiver or no waiver paragraph a deals with waiver there is no paragraph that deals with no waiver other than C that's correct that's your argument yes that's correct and so when you go back to the initial the introductory sentence the client agrees the firm is entitled to its reasonable attorneys fees in addition to cause calculated as follows you have one two three calculated as follows correct was this negotiated this fee agreement this signature on it to the Fair Housing Council the Fair Housing Council is all their experiences in civil rights cases where the lawyers have always except as their contingency fee the right to submit fees to the court so this looked normal and just like every pair every agreement they'd ever seen before the Fair Housing Council seemed perfectly reasonable to them there was no discussion with the Roman firm to answer your question it just showed up resigned so when you're talking about whether there is a gap or an ambiguity but if we look at the as again case yes DC it seems to suggest or state that that the gap filling takes place where the parties never contemplated a particular contingency are you saying that because of the way these civil rights cases Fair Claims Act or 504 our setup that that is not applicable because the parties are contemplating the contingency of waiver of not waiver summary judgment of trial etc what how does that work with the in the False Claims Act scenario which we're dealing with here the client has the right to seek hourly an hourly fee award from the defendant or you know as ordered by the court to be paid by the defendant it is in my practice 30 years unheard of for a seek those fees that's absurd it'd be ridiculous for a client not to seek those fees happens in every single case unless the clients the defendants pleading empty-pockets defense and asked you to waive them so of course they knew that the climate distinct hourly fees I don't know why they wouldn't know that that's not an unforeseen circumstance I think the question is if I may your honor I mean there's two different ways something could be unforeseen something could be unforeseen and therefore not addressed in a contract in a sense of like and then something could be unforeseen in a sense of it is addressing the contract but you know if you thought about it particularly you may have written a different provision for that I think I think maybe this would fall into the latter latter category for for your colleagues the relevant firm controlled what as all lawyers do in contingency contracts they control what contingency fee provisions they want to put in the contract at the outset and they can propose whatever they want to the right they can let me let me ask the kind of time you here you know could seem suspicious you know like it could be that somebody read this and figured out right or sort of why we could we could keep a lot more of the money if we fired him now and then is that what happened here was there some other reason for me it does not happen what happened there if there's two parts that answer this question your honor and the the chronology of who knew what when has been misstated from the get-go in the complaint and at every step of the way and including the briefing of this court by the Roman firm the in False Claims Act litigation there are periodic check-ins with the DOJ private counsel and DOJ check-in on status of things it's I don't say all the time but it's a regular frequent event and the if you look at the sequence we breathe this really well and for the district court in the summary judgment we had to truncate it for this court but the DOJ counsel said you have time for a quick a few minutes for a quick brief status update and counsel wrote back to the DOJ said sure what about Monday this is Friday or Monday would work and the DOJ said let's plan on Monday at 11 o'clock that's all anybody knew about it it's just another brief update on Sunday over that same that was on a Friday and on Sunday that weekend the termination nobody knew anything other than it was it going to be a brief update it wasn't until after the fact on Monday that DOJ president calls me do I think that the president's gonna call me and just say hey how you doing I mean if DOJ's checking in I mean that seems once you see it settled the next day after that the government comes in and settles the next day it you're like that we knew nothing about it just sort of flies in the face of I mean it's you're asking a lot the reality your honor of the way this works is we have phone calls with the government all the time they ask us to brief things for them they ask us to run down various things for them they ask them about document interpretation have our client deal with documents for them these status calls happen all the it just seems it's it's sort of like when you leave your wife is there someone else waiting in the wings you know it's I don't know it's suspicious so the government didn't intervene for several more months that's right in the six months later in the status how are you doing meeting that you were going to have that Monday I'm sorry I did it in the Monday meeting you were having with makes clear whether you were told at that time that the government would intervene they were not they were not that meeting that decision they didn't make that decision I believe the summer July I think so the suspiciousness is eviscerated by about a six month gap it has a six month gap and so you didn't go get another lawyer though we're just gonna let it flutter the Fair Housing Council had real problems and this is really brief and I encourage the court to look at the eight pages we cite from the referred to the district court briefing this is a long history of an attorney-client relationship unraveling we excerpt emails quote emails probably a dozen 14 15 emails from the Fair Housing Council saying we can't trust these lawyers lawyers shame on you for acting like this you lawyers so we probably spent a lot of time on that but let me find out if my colleagues have any more questions because you're already well you're already in overtime so let me find out what my colleague question well we can look at the record okay let me find out if they have questions thank you so I'll give you a minute to wrap up thank you to finish that question the the Fair Housing Council because of their distrust for the Roman firm it just been it was an unraveling a year and a half in the works they spent a hundred and forty thousand dollars out of their own pocket to hire two lawyers to protect them from the deal with Roman firm on their behalf and those lawyers were in place they weren't just foundering pro se they had lawyers in place they ultimately found our firm in the late summer or fall and retained us so there's that but this is for it is C it's a standalone paragraph it could have been drafted from want to be a sub paragraph to sub paragraph a it did not it could Roman could have drafted it as a footnote to paragraph a it did not Roman could have drafted it with its own conditional limiting language limiting its effect to subparagraph a Roman did not it stands alone okay thank you for your argument all right miss Ling you have four minutes so once she puts it on the clock I'm looking at the clock and so I'll give you a 30-second warning okay so when you know you're close to wrapping up go for giving me the opportunity you're representing yourself it's just the court you can't hear you that well oh okay yeah I guess right up there yes I am mailing in pepper and thank you very much for allowing me to address the court because the Roman firms agreement with their housing councils identical to its agreement with me I will join in and concur with my co-presenters legal arguments of the interpretation of the contract which also applies equally to me however there are three key points to correct and clarify from the Romans appellant and reply briefs the first one being that I did not pick moment the Romans firm when as they say the government was poised to intervene number two I did not deny the Roman firm the opportunity to seek legal fees from the CRA and I did not say that I and I never said that I would not allow the Roman firm to seek fees from the city of Los Angeles third I request that the imposed on me because of the default judgment so going back to item 1 relating to the Romans belief that their termination was when they thought the government was going to intervene this this is not so at least for me because Scott Moore was retained by me in September 2012 after Michael Allen of the Roman firm told me that you can have it all so he indicated to me that he was going to be stepping back so I had to go out and find fair housing FCA counsel for myself and that's why Scott Moore had come into the and little to no communication with the Roman firm so their argument that they had been representing me for six years is just simply not true I would like for the court to refer to item one of my request for judicial notice which was filed and submitted by former attorney Scott Moore having to do with the that we were experiencing with the Roman firm which which did necessitate having to get new counsel and for many of the same reasons that their housing counsel I did not know at the time was experiencing and that was briefed in their request for judicial notice document 162 if you can kind of go pages 22 to 25 there was just so many similarities that when their housing constant I actually you know began speaking again in I think it was September 2016 this is where I learned many things that there are the 32nd morning oh okay I'm so sorry that's okay so so number one the Roman firm they they mischaracterize so many things because first of all as pointed out the in 2016 we were planning to go forward on our own without the DOJ and when the DOJ learned that that is when they claimed that they own the case but they intervened into seven and a half months later so that was well after the Roman firm was already terminated in December 2016 the item two that I wanted to cover was regarding the legal fees that they say that they were that they say that I did not allow them to have I think if you look at my judicial notice there's ample documentation to show that I had never refused to them have legal fees I only asked that they break down this three by six inch graph that they submitted that's all they ever provided me was a calculation of what they thought they should get none of which was ever broken down and itemized and what exactly they did that was never provided to me and I had asked for that multiple times and Scott Moore had presented that to the CRA as well as to the Department of Justice which is why first they went to state bar requirements they had to provide me what did they do and ultimately they did get paid they got paid but however they they were expecting to double dip and be paid a second time by me but the work that they did and the fees that they received were for both correlators and they were not permitted to double bill so it's inaccurate you know that number one they already got paid and and that was on the CRA part of the FCA case there's still the city of LA case to come and they can still get whatever statutory fees it's going to come up somewhere for whatever they believe they did in that portion okay miss linger two minutes over I've given you two extra minutes I'm just going to find out if my colleagues have any questions of you otherwise you've used two minutes over we don't so that's going to conclude your argument all right all right thank you all right you have two minutes for a rebuttal thank you thank you your honor just a few very quick points I think it's telling that in mr. Warren's argument we heard immediately talking about the template that was used for this the fact that you know how it came pre-signed that it was it was the Roman from the draft of the contract you know these may very well be good jury arguments but it but you know if we want to argue about what were the circumstances of contracting what was the thought behind it you know how how is it how is it prepared you know that goes to the jury and there's a lot of other extrinsic evidence including that mr. Allen Michael Allen at the Roman firm had a conversation before the contract was signed explaining that in any circumstance we are taking the risk of doing this without payment upfront to be clear I don't think that's established in the record that you know this is this is a for a false claims act versus you were talking about the 504 case which is completely different you wouldn't make sense to have a contingency fee in the sense of you know a one-third contingency in the 504 case where you don't have the same kind of potential for the government's share of a really substantial monetary award so I don't agree with the premise my point was simply it was simply that if you want to talk about that this is not the time in the place and for arguing about about that was this language to use your position of this language just crafted by you guys for this one case or your honor I'm not sure I can make a specific representation on that I know that you know that as I mentioned before paragraph a is intended to resolve your particular issue about if this problem of a waiver of fees and needing to protect the firm in a settlement with a waiver scenario but I'm not sure the record necessarily speaks to you to that exactly but I see if I've answered I've taken my two minutes answering the question I have a question about Miss Ling's statement that you can still get your your honor page 40 of the excerpts of record we have a declaration of reporting a voicemail that Miss Ling left saying very explicitly I'm not letting the realm in a firm get a single penny from the city of Los Angeles so you know I think we've seen kind of changes in position on that before but you know I think that just that just is what it is I realize I'm out of time could I say one word in response to just some of the substantive allegations I think this is not your material to these issues but I do think the Roman for these to state that it does not agree of course with these substantive allegations that were made against it this was raised in the district court FHC abandoned these claims Miss Ling did not the district court found against her found that there was no no evidence for this you know so I understand you know that all this has really in the pudding there's a very substantial monetary recovery going to the Roman firms work here and the timing really is indeed suspicious that the new council was able to I think in this case there was you know the Romans firm had done had done the work there was something on the horizon and then all of the arguments in mind and we do we do read everything so you know for Miss Ling I would indicate to you since you don't regularly come to court that oral argument is always short like this but but the court does read all of the briefs and and considers all of the record and that's how we make our decision and the comments that are made here we take into consideration as well so that will conclude oral argument thank you all for your helpful comments and argument and this matter will stand submitted in this court is in recess until tomorrow at 9 a.m.
judges: CALLAHAN, VANDYKE, Arterton